UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

      v.                                                      3:04-cr-067

GREGORY M. ROSE,

                               Petitioner.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

       Petitioner Gregory Rose filed the instant Petition claiming that he received ineffective assistance of counsel: (1) in connection with plea negotiations; (2) at trial; (3) at sentencing; and (4) on appeal. For the following reasons, the Petition is dismissed.

**I.      FACTS**

       Petitioner was arrested in connection with a series of bank robberies. Counsel was appointed for Petitioner. Petitioner was indicted on one count of Conspiracy to commit bank robberies and firearms crimes in violation of 18 U.S.C. § 371; four counts of bank robbery in violation of 18 U.S.C. § 2113(a); and four counts of the use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). A second superseding indictment was filed charging Petitioner with four additional § 924(c) counts. The new counts charged Petitioner under the theory that he possessed (as opposed to used and/or carried) a firearm in furtherance of a crime of violence. Following a jury trial, Petitioner was convicted on all counts. The Court dismissed Counts 4, 7, 10, and 13 (the possession of a firearm counts) on the ground that they were multiplicitous with Counts 3, 6, 9 and 12 (the use and carrying

of a firearm counts). Petitioner was sentenced to 97 months imprisonment on the conspiracy and bank robbery counts (Counts 1, 2, 5, 8, and 11). Petitioner was sentenced to 7 years on the initial § 924(c) count (Count 3) and consecutive sentences of 25 years each on the other § 924(c) counts, for a total of 82 years on the § 924(c) counts. The total sentence was 1,081 months. Petitioner appealed his conviction, which was affirmed on appeal. Petitioner now brings the instant petition claiming he was denied the effective assistance of counsel.

## II.     STANDARD OF REVIEW

This Court may not vacate a sentence of a prisoner in federal custody unless it "was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "The Sixth Amendment right to effective counsel attaches at all 'critical stage[s]' of the case following the 'formal initiation of adversary judicial proceedings.'" United States v. Pitcher, 559 F.3d 120, 123 (2d Cir. 2009) (quoting Moran v. Burbine, 475 U.S. 412, 429, 432, 106 S. Ct. 1135, 89 L. Ed.2d 410 (1986)). "'It is well settled that a defendant's Sixth Amendment right to counsel extends to plea negotiations.'" Pitcher, 559 F.3d at 123 (quoting Davis v. Greiner, 428 F.3d 81, 87 (2d Cir. 2005)). "To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Pitcher 559 F.3d at 123 (citing Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984)). "'The reasonableness of counsel's performance is to be evaluated from

counsel's perspective at the time of the alleged error.'" Pitcher, 559 F.3d at 123 (quoting Kimmelman v. Morrison, 477 U.S. 365, 381, 106 S. Ct. 2574, 91 L. Ed.2d 305 (1986)).

**III.    DISCUSSION**

Petitioner claims that he received the ineffective assistance of counsel at four stages of the underlying proceedings. The Court will address each of the claims *seriatim.*

### a.    Plea Negotiations

Petitioner contends that his trial counsel was ineffective because he failed "to provide proper advice as to whether or not to accept the Government's plea offer." Pet. at p. 15. Petitioner argues that had he accepted the offer to plead guilty to some of the counts in the indictment, he would have had a sentence of approximately 420 months. According to Petitioner, he had

> several discussions with his counsel with regards to this offer. During those discussions, the issue of whether to accept the offer, or wait until a better offer was presented, was discussed. The Petitioner, during those discussions, was lead to believe that if he waited until further in the process, that he would receive a better offer. Counsel further informed the Petitioner that even if they went to trial, all but one of the 924c counts would need to be dismissed as duplicitive [sic]; therefore, it made no sense to take the plea offer.

Pet. at 17-18. Petitioner concludes that "counsel's failure to provide correct and competent advice as to whether the offer from the prosecution would become more advantageous was conduct falling below an objective standard of reasonableness." Id. at 19.

The Court rejects Petitioner's claim that he was denied the effective assistance of counsel concerning plea negotiations. As Petitioner admits, he had "several discussions with his counsel" concerning whether to accept the government's offer. Indeed, Petitioner and his counsel took additional time (approximately 30 minutes) on January 5, 2005 to review the "final version of the plea agreement" in preparation for proceedings before the Court. See

Gov't Ex. C.  In the proceedings before the Court, at which Petitioner was present, trial counsel stated that "the government has presented a plea agreement . . . [that] would require a plea of guilty to the first count, that being conspiracy.  It would also require pleas of guilty to three counts of bank robbery, that being counts two, five, and eight of the second superceding indictment, and also would require pleas of guilty to two counts of 924(c), specifically that being count six of the second superseding indictment and count nine."  Gov't Ex. C at p. 5.  Trial counsel further stated that "what is proposed here today would indicate to the Court that the government's position would be that Mr. Rose be sentenced to 420 months. . . ."  Id. at p. 6.  Counsel stated that he "had extensive discussions with [Petitioner] and his family regarding his option at this point.  I've made certain recommendations.  It's my understanding at this time that Mr. Rose is choosing to reject that plea agreement and go forward from here."  Id.  The Court expressly stated on the record that "[m]y understanding is that the government's offer that's contained in this plea agreement that we've just gone over today and counsel's gone over with his client, that this offer expires as of today?"  Id. at p. 8.  The Assistant United States Attorney ("AUSA") responded "[t]hat's right, your Honor."  Id.  The following colloquy then transpired:

>The Court:   All right.  Just plan on going to trial.
>
>Mr. Dooley [AUSA]: Yes.
>
>The Court:   Let the chips fall.
>
>Mr. Dooley: Yes.
>
>The Court:   . . . . Anything further, Mr. Rose, anything further?
>
>The Defendant: Not at this time that I have.

>    The Court: All right.  That's certainly well within your rights to go to trial.
>    That's why we have courtrooms and lawyers and judges.

Id. at pp. 8-9.

The Court also has before it the affidavit of trial counsel, who states that he advised Petitioner concerning the evidence against him, including the facts that several of his co-defendants were cooperating with the government and would testify against him, and law enforcement uncovered physical evidence in his apartment incriminating him in the charged crimes. See Gov't Ex. A at ¶ 4.  Counsel states that he discussed the plea offer with Petitioner and advised that "this was the best offer he would receive, since [the AUSA] had made me aware of the fact that Department of Justice policy requires a plea to at least two 924(c) violations, and I was aware of the fact that the statute required that the sentences run consecutively." Id. at ¶ 5.  Trial counsel denies advising that the plea offer would improve as the trial approached or that, if he was convicted at trial of multiple 924(c) violations, all but one would have to be dismissed as duplicative.[1]  Id.  Trial counsel further states that, prior to the proceedings on January 5, 2005, he

> fully discussed with [Petitioner] the risks of going to trial and advised him that in my opinion he had virtually no chance of prevailing at trial.  I also advised him that if he was convicted of all the charges at trial, that the sentence he would receive would be close to 100 years, since I was aware that he would receive consecutive sentences for any 924(c) convictions, and that the law mandated 25 year sentences for the second, third and fourth such convictions.

---

[1] This statement is corroborated by the supplemental motion filed be trial counsel wherein, among other things, he requests an order directing:

> the Government to make an election of those counts of the indictment which allege a violation of 18, U.S.C., section 924(c)(1) in view of the fact that said counts of said indictment are multiplicitous in that this indictment creates an exaggerated impression of criminal activity by charging this offense eight times, in separate counts, when, in law and fact, only four such crimes could have possibly been committed by defendant Rose.

See Dkt. No. 89.

Id. at ¶ 6. Trial counsel also corroborates the affidavit of AUSA Dooley, who states that he had a meeting with Petitioner and Petitioner's trial counsel, at which time the AUSA explained that the evidence against Petitioner was strong, that the AUSA believed that Petitioner had no chance of being acquitted, that the government had a policy requiring that he plea to at least two § 924(c) violations, and that, if he was convicted at trial, sentences for all § 924(c) violations would run consecutively. Id. at ¶ 7; Gov't Ex. B at ¶¶ 9-10. The AUSA states that he further advised Petitioner that "the offer wasn't going to get any better than that." Gov't Ex. B. at ¶ 10.[2]

The allegations before the Court are insufficient to warrant a hearing. Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001); see also Machibroda v. United States, 368 U.S. 487 (1962). The Court finds that it has sufficient materials before it to decide the matter and that the testimony of Petitioner or his counsel would add little or nothing to the written submissions. Id. Based on the foregoing evidence, the Court rejects Petitioner's contentions as incredible and finds that he received constitutionally adequate counsel in connection with the plea negotiations and the decision whether to accept or reject the government's offer. It is clear that Petitioner was aware: (i) of the terms of the proposed plea agreement; (ii) of the benefits of the plea agreement; (iii) that the plea offer could not, and would not, get any better; (iv) that the plea offer would expire on January 5, 2005; (v) of the consequences and

---

[2] These facts are further corroborated by the letter sent from the AUSA to trial counsel on September 8, 2004. See Gov't Ex. D. In that letter, the AUSA reminds trial counsel of the likely sentence after trial (100 years) and that the government policy of requiring that he plead to at least two § 924(c) charges would not change prior to trial. Id. Petitioner's claim that he was led to believe that "all but one of the 924c counts would need to be dismissed as duplicative" is belied by the Court's February 18, 2005 Decision and Order rejecting the claim that all but one 924c counts would have to be dismissed and stating that "[i]f the jury concludes that Rose violated both prongs of Section 924(c)(1) for a single course of conduct on a given date, the Court will then re-visit the multiplicity issue and, if warranted, vacate one of the two companion counts." Dkt. No. 99.

probable sentence if he was convicted on all counts; (vi) of the likelihood of prevailing at trial; and (vii) that he should expect to go to trial on February 22, 2005 if he did not accept the plea agreement.³  The Court recollects that many efforts were made to explain to Petitioner the benefits of the plea agreement and the substantial risk of going to trial.  Petitioner's claim that he received the ineffective assistance of counsel in connection with the decision whether to accept a plea agreement is dismissed.

> **b.    Trial**

Petitioner claims that his trial counsel was ineffective because he: (1) "conceded guilt on the majority of claims and issues during opening arguments;" and (2) failed "to discuss such concessions with [Petitioner] prior to doing so."  Pet. at p. 11.

Petitioner's assertions directly contradict the affidavit of his trial counsel.  Trial counsel asserts in his affidavit that:

> Prior to trial I discussed trial strategy with [Petitioner].  Given the overwhelming evidence the government had against Mr. Rose, I advised him that the only viable strategy to pursue, in my opinion, was to highlight the fact that he was not the individual who entered the banks to commit the robberies, hoping that the jury might return a sympathy verdict and acquit him of the 924(c) charges.  I explained to Mr. Rose at the time that this was a longshot, and that the law was not in his favor.  The law of conspiratorial liability (*Pinkerton* liability) was explained to him, and he was aware that if the jury determined that he was part of the conspiracy, that he could be convicted of any crimes committed by other conspirators committed in furtherance of the conspiracy, even if he was not physically present during the commission of the crime. . . .
>
> At trial I pursued the exact strategy we had discussed in advance of trial. . . . [H]e was well aware that I intended to concede certain issues at trial.  To do otherwise would have been ludicrous in the face of the overwhelming evidence the government had pointing to his guilt.  His only hope was jury nullification, based upon sympathy for him. . . . I told [Petitioner] that in my opinion that was very

---

³ The trial commenced on February 22, 2005 as indicated at the January 2, 2005 proceedings.

>unlikely to happen, and that his best option was to accept the plea offer made by the government. He insisted on exercising his right to trial . . . .

Gov't Ex. A at ¶¶ 8-9.

Given the substantial amount of evidence and the affidavit from trial counsel, the Court finds that trial counsel acted reasonably. In the face of the physical evidence against Petitioner, together with the testimony of his co-defendants who testified on behalf of the government, it cannot be said to have been an unreasonable trial strategy to admit that the evidence would "probably" show that Petitioner was a "follower" in the bank robbery conspiracy in an attempt to obtain an acquittal on the more serious[4] § 924(c) counts. See United States v. Thomas, 417 F.3d 1053, 1056-59 (9th Cir. 2005); Farrington v. Senkowski, 214 F.3d 237, 244 (2d Cir. 2000) (trial strategy in admitting guilt on the lesser charge "was a plausible strategic option in a case where the evidence and predatory nature of the crime offered little hope of an acquittal on all counts."). The facts presented trial counsel with few viable options of obtaining an acquittal and the decision to focus on obtaining an acquittal on the § 924(c) counts cannot be said to be unreasonable or to have resulted in prejudice.

    **c.    Sentencing**

Petitioner next claims that "counsel provided erroneous advice prior to sentencing which resulted in the Petitioner's Guidelines sentencing range being raised." Pet. at p. 29. Petitioner claims that his counsel advised him to plead guilty to two pending state court charges prior to sentencing in the federal proceeding because it "would 'look better' to not have them pending at sentencing." Pet. at p. 29. Petitioner claims that he "was never

---

[4] More serious from a sentencing standpoint.

informed about the negative impact those pleas and convictions would have on his criminal history. . . ." Id.

The government concedes that, had Petitioner not pleaded guilty to the state court claims, he would have had a criminal history category of II, instead of a criminal history category of III. As to counts 2, 5, 8, and 11, Petitioner was found to have an offense level of 28. At criminal history category III, the sentencing range is 97-121 months. At category II, the sentencing range is 87-108. Thus, the maximum benefit available to Petitioner was a ten month lower sentence. Here, the Court used 97 months, which falls at the low end of category III, but within the category II range.

Trial counsel's performance in this regard must be viewed by looking at the totality of the circumstances. Petitioner was facing charges in both federal and state court. It is claimed that, had Petitioner been convicted after trial in state court, he could have been sentenced to seven years in state prison consecutive to his federal sentence. As part of a plea negotiation, however, counsel arranged for a three year sentence to run concurrently with the federal sentence. Giving up ten months in exchange for gaining up to seven years is a reasonable trial strategy. What is not known, however, is whether Petitioner would have been eligible for a plea on the state charges *after* his sentencing on the federal charges. If so, then counsel's performance may have been deficient (it would have been objectively unreasonable to forgo an opportunity to reduce Petitioner's sentence) and resulted in prejudice (with a criminal history category of II, Petitioner likely would have received a lower federal sentence). Accordingly, the Court will accept additional evidence, or hold a hearing, limited to the issue of whether Petitioner could have negotiated a similar state plea agreement after his federal sentencing.

**d.     Appeal**

**1.          Mitigating Evidence**

Petitioner contends that his appellate counsel was deficient for failing to challenge the Court's ruling that Petitioner could not present mitigating evidence at sentencing in support of a sentence below the Guideline level. Specifically, Petitioner wished to have his mother and grandmother speak at sentencing. This argument is rejected because Fed. R. Crim. P. 32 does not provide for a criminal defendant to present the testimony of others in support of his efforts to mitigate the sentence. See Fed. R. Crim. P. 32(i)(4) (permitting the defendant's attorney, the "defendant personally", the government attorney, and any victims to speak at sentencing); see also Torres v. United States, 140 F.3d 392, 404-05 (2d Cir. 1998). Moreover, while 18 U.S.C. § 3661 provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence," that information could have been presented to the Court through letters or otherwise. Live testimony was not required. It, therefore, was not objectively unreasonable for appellate counsel not to raise this issue on appeal.

**2.          Constitutionality of § 924(c)**

Petitioner next claims that appellate counsel was ineffective for failing to challenge the constitutionality of 18 U.S.C. § 924(c) as being "void for vagueness, as it encompasses conduct clearly permitted under the Second Amendment." Petitioner asserts that § 924(c) criminalizes conduct that is constitutional under the Supreme Court's ruling in District of Columbia v. Heller, 128 S. Ct. 2783 (2008).

In Heller, the Supreme Court stated that "the Second Amendment confers an individual right to keep and bear arms. . . ." 128 S. Ct. at 2814. The Supreme Court also noted that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." Id. at 2816. The Supreme Court carefully noted that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places. . . ." Id. at 2816-17. As the Seventh Circuit noted, "[t]he Court said in Heller that the Constitution entitled citizens to keep and bear arms for the purpose of *lawful* self-protection, not for *all* self-protection." United States v. Jackson, 555 F.3d 635, 636 (7th Cir. 2009). "The Constitution does not give anyone the right to be armed while committing a felony. . . ." Id.; see also United States v. Frazier, 2008 WL 4949153, at * 5 (6th Cir. 2008) (unpublished).

Section 924(c) criminalizes the use or carriage of a firearm "during and in relation to any crime of violence" or the possession of a firearm in furtherance of any such crime. This language does not run afoul of the individual right guaranteed by the Second Amendment and its terms are readily understandable. See United States v. Hungerford, 465 F.3d 1113, 1118 (9th Cir. 2006); United States v. Rodriguez, 841 F. Supp. 79 (E.D.N.Y. 1994); United States v. Hoch, 837 F. Supp. 542 (W.D.N.Y. 1993). This Court has not found any cases invalidating § 924 as a result of Heller. See Costigan v. Yost, 2009 WL 1636907, at *2-3 (3d Cir. June 11, 2009); United States v. Rush, — F. Supp.2d —, 2009 WL 2148811, at *1-2 (M.D. Ala. July 14, 2009); United States v. Heredia-Mendoza, 2008 WL 4951051 (W.D.

Wash. 2008). It, therefore, was not unreasonable for appellate counsel not to argue on appeal that § 924(c) is unconstitutionally vague or otherwise fails to comport with Heller.[5]

## IV.    CONCLUSION

For the foregoing reasons, the Petition is DENIED as to the claims of ineffective assistance of counsel with respect to: (1) the decision whether to enter into a plea agreement; (2) the trial; and (3) the appeal. The Court RESERVES on the claim with respect to the issue of sentencing pending the submission of additional evidence, or a hearing, limited to the issue raised herein. Within forty-five days of the date of this decision, the parties shall: (1) submit any additional evidence relating to the issue of whether an identical state plea agreement would have been available after sentencing in this Court; (2) state whether they request a hearing on this issue; and (3) if a hearing is requested, state why a hearing is necessary and why this matter cannot be resolved based on the submission of additional evidence.

IT IS SO ORDERED.

Dated: August 3, 2009

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge

---

[5] Even if it was constitutionally deficient for appellate counsel to raise this argument on appeal, for the reasons stated, Petitioner is unable to demonstrate any prejudice resulting from the failure to raise this argument.